**Daniel KILLIAN, Plaintiff/Respondent,**

v.

**Aubry THARP, Defendant/Respondent,**

and

**State Farm Fire & Casualty Company, Defendant/Appellant.**

No. 68401.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 20, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 25, 1996.

Application to Transfer Denied
April 23, 1996.

Ira M. Berkowitz, Clayton, for Aubry Tharp.

Daniel E. Wilke, Clayton, for State Farm Fire & Cas. Co.

Michael D. Stokes, Christine A. Gilsinan, St. Louis, for Daniel Killian.

RHODES RUSSELL, Judge.

State Farm Fire & Casualty Company ("State Farm") appeals from the trial court's finding that its insured, Aubry Tharp ("Tharp"), was entitled to indemnification in a garnishment suit filed by Daniel Killian ("Killian"). We reverse.

Killian was employed by J & J Installers as an iron worker in October 1988. Tharp was also employed by J & J Installers as a foreman and co-worker of Killian.[1] On October 18, 1988, some steel decking and unsecured roof joists collapsed while Killian was standing on the ground below. As a result of the collapse, Killian sustained a broken shoulder, back, pelvis and leg as well as several broken ribs. Killian was unable to return to work after the accident.

In 1988 Killian filed suit against J & J Installers and a number of other defendants in the Circuit Court of the City of St. Louis. Tharp was joined as a defendant in the summer of 1993. At the suggestion of his employer, J & J Installers, Tharp hired Ira Berkowitz to defend him. Tharp provided Berkowitz with a copy of his home owner's insurance policy issued by State Farm. After reviewing the policy, Berkowitz contacted State Farm and asked that they provide a defense for Tharp, pursuant to the home owner's policy. In February, 1994, State Farm sent a reservation of rights letter to Tharp agreeing to retain Berkowitz to defend the suit, while reserving the right to deny coverage after an investigation of the facts and the policy. State Farm paid Berkowitz's fees through the March 1994 jury trial. The jury returned a verdict of $720,000 in favor of Killian. After a reduction in the award to account for the fault assessed to Killian and a $162,000 set off to account for a co-defendant's settlement during trial, the court entered judgment in the amount of $523,000 against Tharp, the only remaining defendant. State Farm continued to pay Berkowitz through the disposition of the post-trial motions. On June 1, 1994, State Farm denied coverage under Tharp's home owner's policy. Tharp did not contest the decision.

On July 11, 1994, Killian filed an equitable garnishment action against Tharp and State Farm pursuant to § 379.200 RSMo 1994. Killian demanded that State Farm satisfy the judgment to the extent of the policy limit, $300,000. At trial, the only issue was whether Killian's injuries arose out of Tharp's "business pursuits." The State Farm policy issued to Tharp excluded incidents arising out of the insured's "business pursuits." The court entered findings of fact and conclusions of law holding that an ambiguity existed in the State Farm policy concerning the scope of the "business pursuits" exclusion. Specifically, the court found that the "business pursuits" exclusion only applied to activities of an insured if he owned the business, while providing coverage for activities of the insured if he was employed by another. Accordingly, the trial court entered judgment in favor of Killian in the sum of $300,000 plus costs and interest from the date of the original judgment for Killian. This appeal now follows.

The State Farm policy, Section II coverage L, labeled "personal liability" states:

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends

---

1. There is no dispute that Tharp's negligent acts were within the course and scope of his employ-

ment and that he was acting as a co-employee rather than in a supervisory capacity.

when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the occurrence, equals our limit of liability.

The exclusion portion of Section II, however, states:

1. Coverage L and Coverage M do not apply to:

. . . . .

b. bodily injury or property damage arising out of business pursuits of any insured or the rental or holding for rental of any part of any premises by any insured.[2]

The term "business pursuits" is not defined by the policy. The term "business", however, is defined as "a trade, profession or occupation. This includes farming."

█ In the only point on appeal, State Farm claims that the trial court erred by finding that the "business pursuits" exclusion was ambiguous and that the exclusion only denied coverage to Tharp if his negligence arose out of activities related to a business owned by him, and did not exclude activities which arose in the course of his employment for another. We agree.

█ Interpretation of an insurance policy is a question of law. *Chase Resorts, Inc. v. Safety Mut. Cas. Corp.*, 869 S.W.2d 145, 150 (Mo.App.1993). Where the language of a policy is unequivocal, it should be given its plain meaning, even if it restricts coverage. *Jasper v. State Farm Mut. Auto. Ins. Co.*, 875 S.W.2d 954, 956–57 (Mo.App.1994). Exclusionary clauses in insurance contracts are strictly construed against the insurer. *Arbeitman v. Monumental Life Ins. Co.*, 878 S.W.2d 915, 916 (Mo.App.1994). Ambiguous exclusionary clauses are read in favor of the insured. *Id.* An insurance policy is ambiguous if its provisions are duplicitous or difficult to understand. *State Farm Mut. Auto. Ins. Co. v. Carney*, 861 S.W.2d 665, 668 (Mo. App.1993).

State Farm points to two prior opinions that have held similar "business pursuit" clauses to exclude coverage for injuries to the insured's fellow employee. In *Dieckman v. Moran*, 414 S.W.2d 320 (Mo.1967), both parties were employed by the St. Louis Board of Education as sheet metal workers. Moran injured Dieckman when he activated the power brake on a sheet metal machine. Moran had been issued a home owner's policy which excluded injuries which arose out of:

(a)(1) . . . any business pursuits of an Insured, other than under Coverages E and F, activities therein which are ordinarily incident to non-business pursuits,

*Id.* at 321. The Supreme Court found that the exclusion, while "poorly worded", was not ambiguous and denied coverage for the co-employee.

Our court in *Martinelli v. Security Ins. Co. of New Haven*, 490 S.W.2d 427 (Mo.App. 1972), also excluded coverage to a co-employee who was injured by an insured in the course of his employment. That case also involved two employees who were in an accident. We noted therein that *Dieckman* had previously found a similar "business pursuits" exclusionary clause unambiguous and therefore did not re-address the issue.[3]

The trial court's finding of ambiguity herein was primarily based upon a reading of the policy as a whole, including the language of optional provision BU, which was not purchased by Tharp. Option BU, labeled as Business Pursuits, stated:

1. Section II applies to the business pursuits of an insured who is a:

a. clerical office employee, salespersons, collector, messenger; or

b. teacher (except college, university and professional athletic coaches), school principal or school administrator.

2. This option does not apply:

a. to bodily or property damage arising out of business pursuits of the insured in connection with a business. This exclusion applies only if the business is owned or financially controlled by the insured

---

2. The policy goes on to list five exceptions to the "business pursuits" exclusion. Both parties agree that these exceptions do not apply to the present case.

3. The *Martinelli* opinion primarily focused on whether the "ordinarily incident to a non-business pursuit" exception applied, which was not at issue in the present case.

or by a partnership of which the insured is a partner or member.

.  .  .  .  .

c. to bodily injury to a fellow employee of the insured in the course of employment.

It is agreed by all that this option, even if purchased by Tharp, would not have offered any additional coverage as Tharp did not fall into any of the occupations specifically listed in paragraph 1.a. or b. Option BU was intended to provide coverage for some "business pursuits." The main policy purchased by Tharp contained a general exclusion for "bodily injury or property damage arising out of business pursuits of any insured ...". The option stated it would not cover "bodily injury to a fellow employee of the insured injured in the course of employment," nor if the business was owned by the insured. The trial court felt that by not including a specific exclusion for fellow employees in the main portion of the policy an ambiguity was created. We disagree.

We concur with the trial court that it is necessary to read all provisions of the policy together in order to accurately interpret the policy. However, if the trial court's interpretation of the "business pursuits" exclusion is accepted, an illogical application would result. The trial court found that under the coverage Tharp had in the main policy the "business pursuits" exclusion only applied to those who owned their own business. However, if option BU would have been purchased, for an additional premium, the insured would have been denied coverage if he owned his own business and further denied coverage if he injured a fellow employee. Therefore, under the interpretation given by the trial court, Tharp would have been afforded less protection under option BU than he was under the main policy.

The logical and correct interpretation of the "business pursuits" exclusion to the main policy was to broadly exclude all business activities of the insured whether employed by another or through the insured's own business. The policy definition of "business" as a "trade, profession or occupation" supports this broad interpretation. Furthermore this interpretation is in accordance with *Dieck-*

*man* and *Martinelli* and is consistent with the additional coverage available from the purchase of option BU.

Option BU was intended to extend coverage to some "business pursuits" of the insured which would normally have been excluded under the main policy. As such, it was necessary for the option language to specifically state which "business pursuits" it would not cover. The option was clear that it would cover the "business pursuits" of specified employees in certain situations, so long as the insured did not own the business and the insured did not injure a fellow employee. The presence of such precise language in the option did not create an ambiguity in the original policy as found by the trial court.

We find the interpretation given to the "business pursuits" exclusion in *Dieckman* and *Martinelli* controlling and logical in application to this case. The unambiguous language in the policy clearly excluded coverage for Tharp's injuries to Killian as a fellow employee.

Judgment is reversed.

SMITH, P.J., and GARY M. GAERTNER, J., concur.