The **AETNA CASUALTY AND SURETY COMPANY** et al., Appellants,

v.

George **CRAWFORD**, d/b/a **Tradeall Company**, Appellee.

No. 23674.

United States Court of Appeals
Fifth Circuit.

Jan. 11, 1967.

James A. Williams, Kenneth J. Mighell, Asst. U. S. Atty., Dallas, Tex., Bailey, Williams, Weber & Allums, Dallas, Tex., for appellant Insurance Companies.

John W. Douglas, Asst. Atty. Gen., Melvin M. Diggs, U. S. Atty., Morton Hollander, Walter H. Fleischer, Attorneys, Department of Justice, Washington, D. C., for appellant, Export-Import Bank of Washington.

Charles Gallagher, Carter, Gallagher, Jones & Magee, and Ben T. Warder, Jr., Dallas, Tex., for appellee.

Before TUTTLE, Chief Judge, and JONES and GEWIN, Circuit Judges.

TUTTLE, Chief Judge:

This is an appeal from the judgment of the District Court which, upon considering that the insurance policy under the fact situation before it was inequitable to the policyholder, reformed the policy to permit coverage without any evidence of mutual mistake.

We reverse.

The appellee shipped 800 gallons of paint in 50-gallon containers to A. O. Johnson and Company of Lagos, Nigeria. The shipment was made on sight draft, bill of lading attached. Upon arrival of the shipment in Nigeria, the buyer refused to accept the shipment and refused to honor the sight draft. He contended that the order was to have been shipped in one-gallon cans rather than in 50-gallon cans. As we read the customer's order, we find no basis for this contention. However, this has no bearing upon the decision of the case, since it is clear that the shipment was refused on account of this dispute.

Prior to making the shipment, the Tradeall Company had obtained a commercial insurance policy issued jointly by the Foreign Credit Insurance Association (composed of a number of insurance companies under the auspices of the Export-Import Bank of Washington) and the Export-Import Bank of Washington, Government agency, each of which would be liable for fifty per cent of any recovery on the policy. The policy provided for reimbursement of eighty-five per cent of the amount of the appellee's losses incurred in connection with certain shipments as to goods shipped in foreign commerce. Coverage arises if, after shipment, there is insolvency of the buyer while goods are in transit, failure of the buyer to pay within six months the value of products delivered to and accepted by the buyer; and, "political risks" such as cancellation of licenses, imposition of a law, order or decree preventing imports into buyer's country, war and expropriation of buyer's business. However, the policy also contained exclusionary clauses denying coverage for (1) [Clause V—B] any loss due to the fault of the insured or its agent, (2) [Clause V—D] any loss with respect to which a dispute exists between the insured and the buyer until such loss is determined to be a legally enforceable indebtedness of the buyer, and (3) [V—E] any loss arising from the unwillingness of the buyer to accept the products.

The case was tried by the District Court solely on a stipulation. The stipulation made no mention of any oral agreement by the parties prior to the acquisition of the policy that in any way conflicted with any of the terms stated in the policy. In a letter to counsel, the trial court expressed the idea that the policy as written was inequitable and unfair to a seller under a contract of sale by sight draft because of the fact that if the goods sold on sight draft were rejected, there would be no credit risk because the goods would still be available to the seller. The trial judge concluded that no protection was afforded under the policy for which the shipper had paid a premium. It seems not to have occurred to the trial court that, if in fact the contract could be found upon the state of the record before the trial court to have been without consideration, then the policy was void. Instead, the court held that because of want of consideration running from the insurer to the insured, the policy was to be given effect in a manner which would give the policyholder full protection notwithstanding several clauses of the insuring contract that would exclude coverage.

It is hornbook law that when the terms of an insuring contract are clear and unambiguous, a court is under the duty to construe them as written. Cavanaugh v. Continental Casualty Company, 8 Cir., 325 F.2d 975. It is equally clear that a contract between two parties may not be re-written by a trial court except upon clear and convincing evidence that there was a definite agreement which, by mutual mistake, was not carried into the written contract. See St. Paul Fire and Marine Insurance Company v. Jones, 5 Cir., 98 F.2d 448. Aetna Insurance Company v. Stanford, 5 Cir.,

273 F.2d 150. There is nothing to the contrary in Aetna Insurance Company v. Paddock, 5 Cir., 301 F.2d 807, relied upon by appellee in its brief. Mutual mistake in the execution of a contract cannot be determined by a trial court without evidence that there is such mutual mistake. Here, there was no such evidence, nor hint of any. The policy was not ambiguous and, as pointed out by the United States Government in its brief, there was some coverage afforded to Tradeall even where the goods were shipped under sight draft.

The judgment of the trial court amounted simply to a re-writing of the contract of insurance in an effort to give protection to the insured. This is not permitted in insurance law any more than it is between any other contracting parties.

The judgment is reversed.